UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **Allstate Texas Lloyd's,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **VS.** | § | |
| | § | **Civil Action No. 4:12-CV-02005** |
| | § | |
| **Vincent McKinney,** | § | |
| | § | |
| *Defendant.* | § | |
| | § | |

## OPINION AND ORDER FOR SANCTIONS

Before the Magistrate Judge upon referral from the District Judge is Defendant Vincent McKinney's ("McKinney") Motion for Sanctions (Document No. 34) against Plaintiff, Allstate Texas Lloyd's ("Allstate"), in which Defendant seeks, as sanctions, an Order granting a default judgment against Plaintiff, or alternatively an Order striking Plaintiff's experts.

Having considered the motion, the parties' written submissions, and the evidence presented by both sides at a hearing held on June 20, 2013, it is **ORDERED** for the reasons set forth below, that Defendant McKinney's Motion for Sanctions is **GRANTED IN PART.**

I. Background

This action arises out of a house fire at McKinney's dwelling, 2027 Millhouse Road Houston, Texas 77014, on December 19, 2010. McKinney, who was not home at the time of the fire, learned two days later, on December 21, 2010, that his home had been destroyed in the fire. He reported the loss to his insurer, Allstate. The Houston Fire Marshal conducted an investigation of the fire and concluded that the fire was accidental, due to electrical issues with

his Federal Pacific Breakers. Allstate conducted its own investigation, sending Mr. Nestor Camara from McDowell Owens to determine where and why the fire started. Mr. Camara took three samples of the debris from the burned dwelling. On Dec. 27, 2010, McDowell Owens sent the samples to Armstrong Forensic Laboratories ("Armstrong") for analysis. Armstrong performed two tests on the samples to determine whether any ignitable liquids were present. Two samples were negative, but the third sample taken from the laundry room tested positive for a medium petroleum distillate. Ultimately, on March 22, 2012, Allstate denied McKinney's insurance claim because of arson.

On July 3, 2012, Allstate filed its original complaint for declaratory judgment, seeking a declaration, that: (1) The fire was intentional; (2) the homeowner policy insuring McKinney's dwelling was void; (3) and Allstate had no liability to McKinney. McKinney filed a timely counterclaim, alleging that the denial of his insurance claim constituted a breach of contract.

During the course of discovery in this case, McKinney learned that the samples taken from his fire-damaged residence had been destroyed and that such destruction occurred upon the instruction of the insurance adjuster assigned to his claim, Mr. Byron Rachel. Of particular significance is the fact that McKinney learned of the ordered destruction of the samples not from Allstate, but from Mr. Nestor Camara, who referenced and produced an email between Mr. Rachel, Marilyn Thompson, and Sherrill Simmons, all adjusters from Allstate. Allstate claims it did not have the email.

In his Motion for Sanctions, McKinney argues that Allstate had a duty to preserve evidence, that Allstate breached that duty in bad faith by destroying evidence and attempting to hide its decision to destroy the evidence, and that he has been prejudiced by the destruction of

the samples. Allstate, in response, argues that the destruction was unintentional and that the samples did not provide the sole basis for denying the claim.

II.  Sanction Standard

Under Federal Rule of Civil Procedure 37(b), a party may seek sanctions for conduct occurring during the discovery process. Here, Allstate allegedly destroyed the evidence on July 25, 2011 and filed suit nearly a year later on July 3, 2012. *See* Allstate's Original Complaint for Declaratory Judgment (Document No. 1).  Thus, Rule 37 does not apply because the destruction of the evidence at issue occurred before the case was filed. *Lopez v Kempthorne*, 684 F.Supp.2d 827, 890 (S.D. Tex. 2010).

There are few cases in the Fifth Circuit that address the availability of sanctions for spoliation of evidence, but because this case involves Texas state law claims, the Court "may supplement its analysis by applying elements from Texas case law" where they do not contradict the established Fifth Circuit law. *In re Advanced Modular Power Systems, Inc.*, No. 07-34646-H4-7, *9 (Bkrtcy. S.D. Tex. Aug 31, 2009). Allegations of spoliation are generally addressed in federal courts through applicable rules or statutes, including Rule 37(b). A court may, however, use its inherent power to assess sanctions if the alleged conduct occurs before a case is filed or if there is no statute or rule that adequately addresses the conduct. *Crompton Greaves, Ltd. v. Shippers Stevedoring Co.*, CIV. A. H-08-1774, 2013 WL 441453 (S.D. Tex. Feb. 5, 2013).

When relying on its inherent authority to impose sanctions, a Court has broad discretion in crafting an appropriate remedy. *Ashton v. Knight Transportation, Inc.*, 772 F.Supp.2d 772, 801 (N.D. Tex. 2011). An appropriate remedy must be "no harsher than necessary to respond to the need to punish or deter and to address the impact on discovery." *Id.* Therefore, spoliation

remedies should: (1) deter future parties from practicing spoliation; (2) punish the spoliating party for destroying relevant evidence; and (3) "restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party." *Id.* Sanctions for spoliation of evidence may include "awarding attorney fees, deeming certain facts admitted, giving an adverse inference instruction to the jury, excluding evidence or expert testimony, striking pleadings, entering a default judgment, and dismissing the case entirely." *Id.* The latter, more severe, sanctions are only available only upon a showing of bad faith conduct. *Id.*

Spoliation is the "destruction or material alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Rimkus Consulting Grp. v. Cammarata*, 688 F.Supp.2d 598, 612 (S.D.Tex.2010). BLACK'S LAW DICTIONARY 1531 (9th ed. 2009). The concurrence by Justice Baker in the Supreme Court decision in *Trevino v. Ortega*, 969 S.W.2d 950, 954-955 (Tex. 1998), formulated a test that has found extensive application in spoliation cases, including *Ashton v. Knight Transportation, Inc.,* 772 F.Supp.2d. 772 (N.D. Tex. 2011). "The inquiry as to whether a spoliation presumption is justified requires a court to consider (1) whether there was a duty to preserve evidence; (2) whether the alleged spoliator breached the duty; and (3) whether the spoliation prejudiced the nonspoliator's ability to present its case or defense." *Trevino v. Ortega*, 969 S.W.2d 950, 954-955 (Tex. 1998).

In *Ashton v Knight Transportation, Inc.*, circumstantial evidence, in the aggregate, established that a truck owner and driver had a duty to preserve evidence from an accident, but instead, intentionally destroyed or altered two sets of evidence in connection with a eighteen-wheeler hit and run that led to the death of Plaintiff. More specifically, the Defendants destroyed

4

the tires and electronic communications from the days immediately surrounding the accident. The Court applied the *Trevino* test and found each of the three spoliation factors.

With respect to the duty to preserve evidence, the Court in *Ashton* found with little debate that Defendants had "a duty to preserve the truck and its tires in the condition that they existed immediately after the accident." *Ashton,* 772 F.Supp.2d at 802. Defendants also could reasonably foresee litigation at the time they were involved in a fatality accident and when they replaced the tires. "The truck and tires were unique, irreplaceable pieces of evidence, critical to determining the degree of the Defendants' fault for Ashton's death." *Id.* The fact that the Qualcomm communication messages were the primary communication between the two Defendants after the accident, "should have put [Defendants]...on notice that this data would be highly relevant evidence in upcoming litigation." *Id.* Secondly, the Court found that the facts and circumstances surrounding the Defendants' destruction of the tires and the Qualcomm communication data "manifest[ed] bad faith"; therefore, Defendants breached their duty to preserve the evidence. *Id.* As a professional driver, defendant knew that fleeing the scene would thwart the necessary efforts to recover evidence. The replacement of the tires could not "seriously be labeled anything less than intentional conduct." *Id.* Additionally, the defendants' failure "to preserve key Qualcomm messages, in the face of a request to produce and preserve...also strongly evinces bad faith." *Id.* At any point in time after a year the messages would automatically delete, but the Court found defendants could have easily printed the messages. *Id.* Lastly, the Court concluded that Defendants' bad faith actions materially "compromised" Plaintiff's "ability to present its case." *Id* at 803. This was because without access to the truck and tires, Plaintiff had no direct or physical evidence to prove that Defendant's vehicle actually struck him. The Court also found that Defendants' expert opinion that, "based on his private inspection of the truck, [Defendants']

vehicle did not strike [Plaintiff]" only reinforced its opinion that Plaintiff had suffered substantial prejudice. *Id.* Therefore, the Court determined that the missing evidence would have aided Plaintiff in proving her claim.

In determining whether sanctions are available in this case, the *Trevino* test will be applied. In determining an appropriate sanction, the factors set forth in *Ashton* will be used as a guide.

III.  Analysis

1.  Duty

The first prong of the *Trevino* test has been satisfied. At the time the samples were destroyed, McKinney's claim under his insurance policy was pending, and Allstate knew or could have reasonably anticipated litigation related to the claim. A duty to preserve arises when a party knows or should know that certain evidence is relevant to pending or future litigation. *Ashton*, 772 F.Supp.2d at 800. Once litigation is reasonably anticipated, a potential party to that litigation "must not destroy unique, relevant evidence that might be useful to an adversary." *Id.* The duty to "preserve evidence is a duty owed to the court…hence, spoliation is considered an abuse of the judicial process." *Id.*

At the time Rachel ordered the evidence destroyed by his email dated July 6, 2011, Allstate was anticipating litigation. Allstate had already received notice that Mr. McKinney had retained an attorney, who attended McKinney's examination under oath on June 1, 2011. *See* McKinney's Examination under Oath, and Affidavit of Richard G. Wilson, Exhibits B and L, respectively, to McKinney's Motion for Sanctions (Document No. 34). Allstate also withheld documents regarding the destroyed samples and its investigation based on work product

privileges on June 22, 2011. Work product privilege only applies if material was prepared "in anticipation of litigation or for trial." FED. R. EVID. 502(g)(2). Allstate's conduct shows the same type of destruction or alteration of evidence as seen in *Ashton*. Allstate had a duty to preserve the evidence it destroyed.

    2.  <u>Breach</u>

Allstate breached its duty to preserve the evidence when it ordered the destruction of the samples, thus, the second prong of *Trevino* is also satisfied. Parties need only take reasonable care in, but not extraordinary measures, to preserve evidence. *Trevino*, 969 S.W.2d at 956. The term "bad faith" has been described as conduct involving "fraudulent intent and a desire to suppress the truth" and as "destruction for the purpose of depriving the adversary of the evidence." *Ashton*, 772 F.Supp.2d at 800-801.

Here, on July 5, 2011, the assigned twenty-one-year veteran adjuster Byron Rachel, completed McKinney's claim investigation. On July 6, 2011, Rachel received an email from Marilyn Thompson, another Allstate employee, regarding the retention of the samples from McKinney's house. The same day, Rachel responded saying, "Ok, lets proceed with the destruction of the evidence." Exhibit K to McKinney's Motion for Sanctions (Document No. 34). Mysteriously, neither the email nor any reference to a decision to destroy samples appears in Allstate's claim history. Since McKinney's unique claim number appeared in the subject line of the email, the destruction of the sample, similar to the destruction at issue in *Ashton*, cannot "seriously be labeled anything less than intentional conduct" *Ashton,* 772 F.Supp.2d at 802.

On July 25, 2011, the samples from McKinney's home were destroyed as ordered by Allstate. Deposition of Dr. Armstrong dated March 4, 2013 at page 7, Exhibit D to McKinney's Motion for Sanctions (Document No. 34). The claim was denied on March 22, 2012. Byron

Rachel was responsible for investigating and denying the claim and he engaged in the deliberate destruction of evidence. On February 13, 2013, Byron Rachel was deposed. Mr. Rachel testified he did not order the destruction of evidence, but he knew the evidence was gone, and he did not learn about it until after deciding the claim. Deposition of Byron Rachel dated February 13, 2013, attached as Exhibit J to Motion for Sanctions (Document No. 34). Rachel's email of July 6, 2011, ordering the evidence to be destroyed contradicts Rachel's deposition testimony. Lastly, Allstate's claim history does not reflect any of the abovementioned incidents; instead, the claims history report skips from July 5 to July 7, 2011, and has no entry on the date of Mr. Rachel's email ordering the evidence destroyed.

Because the email messages and the claim history have vanished from Allstate's records, this is some evidence of bad faith by Allstate and Mr. Rachel. At the hearing on the Motion for Sanctions, Mr. Rachel testified that he accidentally destroyed fire debris samples and he did not know why he did not have the email. He also showed little effort to try to find the email, which he speculates may have been put in another case file. The Court does not find Mr. Rachel's testimony credible. Contrary to *Ashton*, where the electronic messages were eventually automatically deleted, Mr. Rachel testified there was no way he or anyone at Allstate could delete email messages or claim history. Therefore, destruction of evidence, the suspicious conduct surrounding missing emails, and the missing claim history in the claim file establishes, in the aggregate, that Allstate knowingly destroyed the evidence, and that such destruction, coupled with Allstate's failure to advise McKinney of the destruction either during the claims process or once this case was filed constitutes bad faith conduct on the part of Allstate.

3. Prejudice

The destruction of the fire debris does not allow McKinney to examine the evidence and defend or refute Allstate's position; therefore, McKinney is prejudiced. A party is entitled to a remedy "only when [the spoliation of evidence] hinders its ability to present its case or defense." *Trevino*, 969 S.W.2d at 958. The prejudice requirement is satisfied once the party seeking sanctions demonstrates the missing evidence is relevant to their case. *Ashton*, 772 F.Supp.2d at 801. The destroyed evidence is "relevant" if a "reasonable trier of fact could conclude that the lost evidence would have supported the claims or defenses of the party that sought it." *Id.* Generally, "where a party's ability to present its case or to defend is compromised" the element of prejudice is satisfied. *Id.*

Here, the relevancy of the destroyed evidence is unquestionable. Allstate's expert witness from McDowell Owens concluded from the fire debris test that an accelerant was used to start the fire in the laundry room. This opinion is not only contrary to the Fire Marshall's opinion, but it also appears to be the basis, at least in part, for the denial of McKinney's insurance claim. The prejudice to McKinney is that he cannot physically or visually test the sample Allstate relied on to deny the claim; therefore, the missing evidence is relevant to the case and McKinney's ability to present or defend his case has been compromised. Similar to *Ashton*, McKinney has no direct or physical evidence to defend himself and prove that the fire did not start in the laundry room due to an accelerant. Thus, the evidence is relevant to McKinney as a "reasonable trier of fact could conclude that the lost evidence would have supported the claims or defenses." *Ashton*, 772 F.Supp.2d at 801.

IV.  Conclusion and Order

McKinney has met the three-part *Trevino* test for spoliation sanctions based on the destruction of the samples taken from his fire-damaged dwelling, concealing emails about the destruction, and the lack of a claims history about the destruction of fire debris samples. While no direct evidence establishes an intentional act of destroying the evidence by Allstate, a wealth of circumstantial evidence suggests a cover-up. Allstate did not produce Mr. Rachel's e-mails in response to a request for production. The email communications are "missing" from Allstate's claim history. Rachel's deposition testimony contradicts his July 6, 2011, email. Additionally, at the sanctions hearing, Mr. Rachel's explanation for the missing emails and the absence of notations about destroying samples in the claims history was not credible. The evidence in the aggregate supports the conclusion that Allstate engaged in bad faith conduct relative to the destruction of the samples and concealment of evidence about the destruction.

Having determined that Allstate had a duty to preserve the physical evidence consisting of the samples tested, that they breached that duty in bad faith, and that McKinney thereby suffered prejudice, an appropriate sanction should (1) deter future parties from practicing spoliation; (2) punish the spoliating party for destroying relevant evidence; and (3) "restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party." *Ashton*, 772 F.Supp.2d at 801. Here, having considered the parties' submissions, evidence, and arguments, an appropriate sanction is one that would restore McKinney to the position he would have been in absent the wrongful destruction of evidence by Allstate. This can reasonably be accomplished by striking any and all evidence regarding the testing of the destroyed samples, and any expert opinions that rely, in any way, on such testing.

The entry of a default judgment, as requested by McKinney, would be, upon this record, excessive.

Therefore, it is **ORDERED** that McKinney's Motion for Sanctions (Document No. 34) is **GRANTED IN PART**, and Allstate and its experts are precluded from using, submitting, referencing, or relying on the testing of the samples taken from McKinney's fire-damaged residence on July 25, 2011.

Signed at Houston, Texas, this _24th_ day of _July_, 2013

FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE

11